## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| LIFE INSURANCE COMPANY OF NORTH AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CASE NO. 1:05-cv-760-WKW |
| DWIGHT M. MILLS and ANGEL FAULK, | ) ) ) | |
| Defendants. | ) | |

### AMENDED INTERPLEADER COMPLAINT

COMES NOW Life Insurance Company of North America ("LINA") and for its amended interpleader complaint states as follows:

### PARTIES

1.      Interpleader Plaintiff LINA is an insurance company organized under the laws of the State of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania.  LINA is duly licensed to do business in the State of Alabama.

2.      Defendant Dwight M. Mills is the husband of decedent Sharon Marie Mills ("Mrs. Mills" or "decedent").  Mrs. Mills was a resident of Dothan, Houston County, Alabama at the time of her death.  Mr. Mills also resides in Dothan, Houston County, Alabama.

3.      Upon information and belief, Defendant Angel Faulk is the only child of decedent.  Ms. Faulk resides in Elmore County, Alabama.

01406231.1

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this interpleader action pursuant to Federal Rule of Civil Procedure 22 and 28 U.S.C. § 1331 (federal question), in that this matter relates to an ERISA-regulated employee welfare benefit plan and, as such, arises under the laws of the United States and therefore raises a federal question. This Court's original jurisdiction is therefore founded upon ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

4.     Venue is proper in the Middle District of Alabama pursuant to 28 U.S.C. § § 1397 (the district where one or more of the claimants reside), and 29 U.S.C. § 1132(e)(2) (the district where decedent lived).

5.     Nationwide service of process is authorized under 28 U.S.C. § 2361.

## CAUSE OF ACTION IN INTERPLEADER

6.     Decedent, in her capacity as a spouse, was insured under group accident insurance policy number OK-809795 (the "Policy"), issued by LINA to Mr. Mill's employer, Dyncorp. In that regard, Dyncorp provided the accident coverage for the benefit of its eligible employees and their dependents through its employee welfare benefit plan. A copy of the Policy is attached hereto as Exhibit "A". The Dyncorp Plan (the "Plan") is an employee welfare benefit plan that is regulated by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§1001-1461. The decedent was enrolled for $120,000.00 in accidental death insurance coverage (60% of the principal sum for spousal coverage) as of February 13, 2002, the date of her death.

7.    A true and correct copy of Mrs. Mills' Death Certificate is attached hereto as Exhibit "B".    The Death Certificate reflects that the cause of death is "undetermined."

8.    The Policy provides that "[l]oss of life benefits will be paid to the beneficiary named in our files. . . . If there is no surviving beneficiary, the Insured's loss of life benefits will be paid in one lump sum to the first surviving class of the following classes of beneficiaries:  (a)  wife or husband; (b)  child or children; (c) mother or father; (d)  sisters or brothers.  If there is no surviving member of any of the above classes, the benefits will be paid to the estate."

9.    Dwight Mills completed a "Bargaining Unit Employee Insurance Enrollment\Change Form" on or about February 5, 2002.  Mr. Mills elected the "Family Plan" for personal accident coverage in the benefit amount of $200,000.00.  The beneficiary designation portion of this form states that "[y]ou will be your family members' beneficiary for Personal Accident Insurance, Dependent Life and Optional Dependent Life unless you specify otherwise in writing."  Thus, the employee, Mr. Mills, is the family member's beneficiary for the personal accident insurance at issue.  A true and correct copy of this form is attached hereto as Exhibit "C".

10.    The Group\Association-Proof of Loss Form for life insurance and accidental death insurance was completed for Mr. Mills and submitted to LINA.  The amount of dependent insurance claimed was "sixty percent of $200,000.00."  The Proof of Loss form identified Dwight M. Mills as the beneficiary.  The Employer's\Administrator's Certification,

as completed by the Manager of Human Resources for Dyncorp, was signed on August 12, 2002. A true and correct copy of the Proof of Loss Form is attached hereto as Exhibit "D".

11.    Bryan Billeter, a product specialist for LINA, wrote to Dwight Mills on August 27, 2002 acknowledging receipt of the group term accidental death insurance claim for dependent coverage on Sharon Mills through Dyncorp. A true and correct copy of this correspondence is attached hereto as Exhibit "E".

12.    LINA thereafter conducted its claim investigation. LINA requested autopsy, toxicology and investigative reports from the office of the medical examiner in Panama City, Florida, where decedent's body was discovered. LINA further conducted its investigation by soliciting investigation reports and information from the Holmes County, Florida Sheriff's Department. Although many aspects of the police investigation were privileged, and thus LINA's representatives were unable to discover the underlying facts, LINA representatives learned that the cause of death was a possible homicide as the decedent's body was found in a drainage ditch, which was not the result of a moving vehicle accident. LINA further learned that criminal charges against any suspects are contingent upon a final determination of the cause of death and that the death certificate will be amended pending the final results of additional testing and investigation by the police department. LINA advised Dwight Mills in writing on a regular basis between September 23, 2002 and October 4, 2004 that the accidental death claim submitted for Ms. Mills was being reviewed and that LINA was continuing to await information from the police department who was investigating the case. To date, the criminal investigation is ongoing.

13.    Although LINA is unable to determine the facts of an ongoing criminal investigation, it is LINA's understanding that Defendant Dwight Mills remains a suspect in the criminal investigation.  As an independent stakeholder, and without suggesting or implying that Dwight Mills is in any way responsible for decedent's death, LINA submits that Alabama's "Slayer's Statute" provides that "[a] named beneficiary of a bond, life insurance policy, or other contractual arrangement who feloniously and intentionally kills the principal obligee or the person upon whose life the policy is issued is not entitled to any benefit under the bond, policy or other contractual arrangement, and it becomes payable as though the killer had predeceased the decedent.  See Ala. Code 1975 §43-8-253.  The Alabama Supreme Court has recognized that the Slayer's Statute codifies public policy under prior Alabama law which had applied the principle that a person cannot benefit from his own wrongdoing.  *See Protective Life Insurance Company v. Linson*, 17 So.2d 761 (Ala. 1944).  More recently, the Alabama Supreme Court recognized in *Alfa Life Insurance Corporation v. Culverhouse*, 729 So.2d 325 (Ala. 1999), that an insurer which has paid the proceeds of a policy to a beneficiary who had feloniously and intentionally killed the insured may still be liable to pay the proceeds as though the beneficiary had predeceased the insured.

14.    By reason of the claim submitted by Mr. Mills as the named beneficiary, and the potential claims of Angel Faulk as the only known member of the next "surviving class" of beneficiaries under the Policy (in the event that the Mr. Mills is deemed to have predeceased the decedent), LINA and the Plan are, or may be exposed to multiple liability. This determination is dependant upon the resolution of the ongoing criminal investigation.

15.    Upon information and belief, based upon a telephone inquiry to the Probate Court of Houston County, Alabama, no estate administration has been initiated for decedent Sharon Marie Mills.

16.    On September 28, 2005, LINA deposited $144,445.34 (including $24,445.34 in accumulated interest) with the Registry of the Court, evidencing fully payment of the proceeds of the accidental death coverage available under the Policy.  LINA, as a mere stakeholder, has no interest in the Plan benefits payable and respectfully requests that this Court determine to whom said Plan benefits should be paid.

17.    LINA has not brought this Amended Complaint in Interpleader at the request of any the claimants; there is no fraud or collusion between LINA and any or all of the claimants; and, LINA brings this Amended Complaint of its own free will and to avoid being vexed and harassed by conflicting and multiple claims.

18.    Until this Court rules on the issue of whether the Plan benefits should be paid to Mr. Mills or Ms. Faulk, in accordance with the terms of the Plan, LINA cannot safely determine the proper recipient(s) of the Plan benefits without risking exposure to multiple liability.

**WHEREFORE**, LINA demands judgment as follows:

(i)    Restraining each of the Defendants by Order and Injunction of this Court from instituting any action against LINA, Dyncorp, or the Plan for the recovery of Plan Benefits;

(ii)    Requiring each of the Defendants, both currently named and as subsequently named and added, to answer this Amended Complaint in

Interpleader and litigate their claims between themselves for the subject total Plan benefits in this action;

(iii)    Enjoining each of the Defendants from instituting or prosecuting any proceeding in any state or United States Court affecting the Plan benefits involved in this interpleader action pursuant to 28 U.S.C. § 2361.

(iv)    Requiring that Defendants settle and adjust among themselves, or upon their failure to do so, this Court settle and adjust the claims and determine to whom the total funds should be paid;

(v)    Discharging LINA, Dyncorp, and the Plan from any further liability upon payment of the aforementioned Plan benefits into the Registry of this Court or as otherwise directed by this Court and dismissing with prejudice this action as to LINA;

(vi)    Awarding LINA attorney fees and costs related to this Action and any other and further relief that this Court deems just and proper.


/s John David Collins
William B. Wahlheim, Jr.
John David Collins
Grace C. Robinson
Attorneys for Plaintiff
Life Insurance Company of North America

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, Alabama 35203-2602
(205) 254-1000

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL:**

Angel Faulk
120 Honeysuckle Court
Wetumpka, Alabama 36093

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 26th day of October, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: W. Terry Bullard, and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

[none]

/s John David Collins
OF COUNSEL

# EXHIBIT A

# APPLICATION TO
# LIFE INSURANCE COMPANY OF NORTH AMERICA

This is an application for insurance on Form # __LM-2L60__.
It is based on the following statements and representations:

| | |
|---|---|
| Policy Number | OK-809795 |
| Service Office | 509 Washington, DC |
| Agent or Broker | N/A |

1. Name of Organization: __DynCorp__

   Address: __6801 Calmont Avenue, Ft. Worth, TX 76116__

   Type of Business of Organization: __Corporation__

   Coverage for Affiliates or Subsidiaries: __yes__ (if yes, attach list)

2. Persons eligible to be covered under the policy are those who fall within the classes described below; provided, a written application has been made and the required premium paid. Dependents of those who fall within these covered classes also are eligible; provided, the requirements for eligibility are met, the proper Coverage Plan is selected, and the correct premium is paid.

| CLASS | DESCRIPTION OF ELIGIBLE PERSONS | NUMBER OF ELIGIBLE PERSONS |
|---|---|---|
| 01 | Active, full-time permanent employees | |
| 02 | Spouse of Class I | |
| 03 | Dependent child/ren of Class I | |

PITTSBURGH

JAN 09 2002

Group Life & Disability
Coverage Unit

3. Applicable coverage and amount of Principal Sum per person:

| CLASS | APPLICABLE COVERAGE | APPLICABLE PRINCIPAL SUM |
|---|---|---|
| 01 | AD&D, S&H, Paralysis | 25,000 - 300,000 |
| 02 & 03 | AD&D, S&H, Paralysis | % Family Plan * (60, 50 - 15, 25) |

\*Amounts over $250,000 cannot exceed
10 times Annual Earnings

\*Spouse Maximum Benefit  $250,000
Child Maximum Benefit  $ 25,000

4. The premium shall be determined at the following rate(s) per $1000 Principal Sum Benefit:   monthly
   Class I (only) - $.028,  Class I and Family  - $.0436

   In computing the premium, no charge or credit will be made for a fractional part of a policy month. This applies to all additions, deletions and changes in the classification of insureds.

5. The mode of premium payment under this policy shall be __monthly__.
   Premiums are paid by: ☐ Employer   ☒ Employee   ☐ Employer and Employee.

6. The aggregate limit of liability per __accident__ shall be $__2,000,000__. We will not be liable for any amount over the limit stated above for any one accident. If the total amount of benefits to be paid under this policy for any one accident is more than the total amount of our liability, we will only pay those benefits that are in proportion to our total liability.

7. The Transmittal Agent appointed by the Organization is: (if none appointed, state "none") _____
   __Laurie Emmerichs, Director Employee Benefits__

8. Effective Date and Signature: __X__ Original Application for Policy Effective: __January 1, 1992__

   __X__ Application for Policy Revision Effective:_____

For the Organization:   Signed: _Laurie Emmerichs_

   Title: _Director Employee Benefits_

LM-2L68

4-16-82   Printed in U.S.A.

# LIFE INSURANCE COMPANY OF NORTH AMERICA

## FAMILY PLAN RIDER

This rider amends the policy or certificate to which it is attached. It takes effect and expires at the same time as such policy or certificate.

**Eligibility:** The "Family Plan" provides coverage for: (a) the insured employee or member; (2) the insured's spouse; and (3) the insured's dependent children (as defined in the policy or certificate).

**Benefits:** Benefits for all covered persons are based upon the insured's Principal Sum amount as follows:

(1) Insured and Spouse (children not covered):
| | |
|---|---|
| Insured | 100% of the Principal Sum |
| Spouse | 60% of the Principal Sum |

(2) Insured, Spouse and Children Covered:
| | |
|---|---|
| Insured | 100% of the Principal Sum |
| Spouse | 50% of the Principal Sum |
| Each Child | 15% of the Principal Sum |

(3) Insured and Children (Spouse not covered):
| | |
|---|---|
| Insured | 100% of the Principal Sum |
| Each Child | 25% of the Principal Sum |

**Waiver of Premium:** We will waive payment of all premiums for surviving eligible spouse and children, coming due during a period of 12 months following the insured's accidental death for which benefits are payable.

No other policy provision or condition is changed in any way by this rider.

LIFE INSURANCE COMPANY OF NORTH AMERICA

HARTZEL Z. LEBED, President

# POLICY SCHEDULE

Name of Organization:                                                                Policy No.:

| Cert. # | Name of Insured | Principal Sum | Coverage Effective | Coverage Terminated |
|---------|-----------------|---------------|--------------------|---------------------|

As on file with the policyholder

LM-2L70                                                                4-16-82   Printed in U.S.A.

# LIFE INSURANCE COMPANY OF NORTH AMERICA

## AMENDATORY RIDER

This rider amends the policy to which it is attached. It replaces any previous rider as of the effective date stated below.

### AFFILIATED OR SUBSIDIARY ORGANIZATIONS

(Eligible for policy coverage as of the effective date of this rider)

```
Refer to listing provided by the policyholder
```

No other policy provision or condition is changed in any way by this rider.

| Effective Date | January 1, 1992 | at the hour stated in the policy. | Part of Policy No.<br>OK-809795 |
|---|---|---|---|
| Issued To: | DYNCORP | | |

HARTZEL Z. LEBED, President

LM-2L95

4-16-82  Printed in U.S.A.

# LIFE INSURANCE COMPANY OF NORTH AMERICA

## EXTENDED COVERAGE RIDER

This rider amends the policy or certificate to which it is attached. It is in force only while the policy is in force.

All reference to employee age limitations in the Eligibility and Termination provisions are deleted. In return for the premium, the following benefit is added.

We will pay benefits for loss resulting from a covered accident for an employee age 70 and over as follows:

| AGE AT DATE OF LOSS | BENEFIT AMOUNT BASED ON SELECTED PRINCIPAL SUM |
|---|---|
| 70-74 | 70% |
| 75-79 | 45% |
| 80-84 | 30% |
| 85 and over | 15% |

Eligibility for conversion coverage will continue to end at age 70. Coverage for loss resulting from paralysis, terminates at age 70.
If the Family Plan is elected, coverage for a dependent spouse will end at age 70. Accidental Death and Dismemberment benefits for insured dependents will be based on the Employee's Selected Principal Sum. All other plan benefits that are based on the Employee's Principal Sum will be computed according to the schedule above.

Premiums are based on the Selected Principal Sum prior to the reduction outlined above.

"Selected Principal Sum" means the Principal Sum stated in the Policy Schedule.

Except for the above, this rider does not change the policy in any way.

LIFE INSURANCE COMPANY OF NORTH AMERICA

*Gordon L. Murphy*

GORDON L. MURPHY, President

LM-4H87

(8/87)  4/87   Printed in U.S.A.

## LIFE INSURANCE COMPANY OF NORTH AMERICA

### AMENDATORY RIDER

This rider amends the policy or certificate to which it is attached. It is in force only while the policy is in force.

In exchange for the required premium, the following benefit is included:

#### INCREASED DEPENDENT CHILD BENEFIT

**INCREASED DEPENDENT CHILD BENEFIT FOR ACCIDENTAL LOSS OF [LIMB, SIGHT, SPEECH, HEARING AND PARALYSIS]:**

If a Dependent Child (as defined in the policy or certificate) receives bodily injuries which result in a Covered Loss [a loss listed under Coverage A, Description of Coverage, LM-2284] then we will pay double the Benefit Amount up to a maximum of $50,000. If in addition to a Covered Loss, the Dependent Child dies within 90 days of the Covered Accident, then we will pay only the Death Benefit Payable under the Family Plan Schedule up to a maximum of $25,000.

If the Dependent Child sustains more than one Covered Loss from a single Covered Accident, then we will pay double the Benefit Amount only for the one largest amount to which the Dependent Child is entitled.

LIMITATION: The Maximum Benefit Amount payable under the policy as a result of the Accidental Death of a Dependent Child is $25,000.

Except for the above, this rider does not change the policy or certificate in any way.

LIFE INSURANCE COMPANY OF NORTH AMERICA

*Gordon L. Murphy*

GORDON L. MURPHY, President

# LIFE INSURANCE COMPANY OF NORTH AMERICA

This rider amends the policy or certificate to which it is attached. It is in force only while the policy is in force.

## SEATBELT BENEFIT

We will pay an additional accidental death benefit of a minimum of $1,000 per covered person up to a maximum of 10% of the covered person's benefit not to exceed $25,000 We will pay this benefit if a covered person suffers loss of life, as the result of a covered accident which occurs while he is driving or riding in a Private Passenger Car, if:

1. The car is equipped with seatbelts; and
2. The seatbelt was in actual use and properly fastened at the time of the accident; and
3. The position of the seatbelt is certified in the official report of the accident; or by the investigating officer. A copy of the police accident report must be submitted with the claim.

If such certification is not available, and it is unclear whether the covered person was properly wearing a seatbelt, then we will pay a fixed benefit of $1,000 to the designated beneficiary.

"Private Passenger Car" means: a validly registered four-wheel private passenger car (including Policyholder-owned cars), station wagons, jeeps, pick-up trucks and van-type cars.

In the case of a child, seatbelt means a child restraint, as required by the state law and approved by the National Highway Safety Administration, properly secured and being used as recommended by its manufacturer for children of like age and weight at the time of an accident.

Except for the above, this rider does not change the policy in any way.

LIFE INSURANCE COMPANY OF NORTH AMERICA

*Gordon L. Murphy*

GORDON L. MURPHY, President

LM-3244

2/88

# LIFE INSURANCE COMPANY OF NORTH AMERICA

## AMENDATORY RIDER

**Policyholder:** DYNCORP                          **Effective Date:** January 1, 1992

**Policy Number:** OK-809795

This rider amends the policy or certificate to which it is attached. It takes effect on the Effective Date stated above and ends at the same time as the policy or certificate.

## COMA BENEFIT

If as a result of a covered accident, a Covered Person is injured, we will pay an additional benefit if the Covered Person becomes Comatose within 31 days of the accident, and remains Comatose beyond the Waiting Period.

A person is considered "Comatose" or in a Coma, if he is in a profound stupor or state of complete and total unconsciousness, as the result of an accident.

The "Waiting Period" is the 31-day period from the day the Covered Person becomes Comatose.

We will pay this benefit at the rate of 1% of the Covered Person's Principal Sum per month from the end of the Waiting Period. We will cease payment on the earliest of:
- a) the end of the month in which the Covered Person dies;
- b) the end of the 11th month for which this benefit is payable;
- c) the end of the month in which the Covered Person recovers from the Coma.

If the Covered Person remains Comatose after this Coma Benefit is payable for 11 straight months, we will pay a lump sum benefit equal to the Principal Sum payable under the policy for Accidental Death reduced by the amount of any Accidental Dismemberment, loss of sight, speech or hearing or paralysis benefits paid to the Covered Person for the loss caused by the covered accident. In this event, benefits will not be paid under the policy for Accidental Death.

If the Covered Person dies as a result of the covered accident while the monthly Coma Benefit is payable, benefits will be paid under the policy for Accidental Death.

Coma Benefits will be payable to the Covered Person's legal guardian, or in the event no legal guardian is appointed, to the person, who in the opinion of the Company, is responsible for care of the Covered Person.

TL-003899                                      REORDER NO. TL-004004

## AMENDATORY RIDER

This rider amends the policy or certificate to which it is attached. It takes effect and ends at the same time as such policy or certificate.

In consideration of the premium, the following benefit is added:

### SPECIAL EDUCATION BENEFIT

We will pay a "special education benefit" if the Insured:
    a) is covered under the Family Plan; and
    b) dies as the result of a covered accident; and
    c) is survived by a dependent child who:

     (1) on the date of accident, was enrolled as a full-time student in any school beyond the 12th grade level; or
     (2) was at the 12th grade level and later enrolls as a full-time student at a school of higher learning within 365 days after the accident.

The "special education benefit" is payable for each child who qualifies:
    a) in an amount equal to 3% of the Insured's Principal Sum, but not more than $5,000;
    b) once a year for not more than four straight years;
    c) only while the child continues as a full-time student at a school of higher learning;
    d) in addition to all other policy benefits.

If, at the time of accident, Family Plan coverage is in force but there is no dependent child who qualifies, we will pay an additional benefit of $1,000 to the Insured's designated beneficiary.

No other policy provision or condition is changed in any way by this rider.

LIFE INSURANCE COMPANY OF NORTH AMERICA

*Hartzel Z. Lebed*

HARTZEL Z. LEBED, President

LM-9L70

4-16-82   Printed in U.S.A.

## LIFE INSURANCE COMPANY OF NORTH AMERICA

### AMENDATORY RIDER

**Policyholder:** DYNCORP        **Effective Date:** January 1, 1992

**Policy Number:** OK-809795

This rider amends the policy or certificate to which it is attached. It takes effect and ends at the same time as such policy or certificate.

In return for the premium, the following benefit is added:

### CHILD CARE CENTER BENEFIT

We will pay this benefit if the Insured Employee:

- a) has elected coverage for his dependent children; and
- b) dies as the result of a covered accident; and
- c) is survived by a dependent child who:
  - 1) on the date of the covered accident was enrolled in a legally licensed Child Care Center; or
  - 2) is enrolled in a legally licensed Child Care Center within 365 continuous days from the date of the accidental death; and
  - 3) is under 13 years of age.

The Child Care Center Benefit is payable for each child who qualifies:
- a) in an amount up to 2% of the Insured Employee's Principal Sum, but not more than $5,000 per year; and
- b) only while the dependent child continues to be enrolled in a legally licensed Child Care Center.

We will pay this benefit once a year for not more than 5 years, or until the dependent child enters the first grade, whichever happens first.

Child Care Center Benefits will be payable to the surviving spouse, if the spouse has custody of the child. If there is no surviving spouse, or the child does not live with the spouse, then the benefit will be paid to the child's legally appointed guardian.

"Child Care Center" means a facility which:
- a) is run according to law, including laws and regulations applicable to child care facilities; and
- b) provides care and supervision for children in a group setting, on a regular, daily basis.

A Child Care Center does not include:
- a) a hospital; or
- b) the child's home; or
- c) care provided during normal school hours while a child is attending grades one through twelve.

TL-003900        **REORDER NO. TL-004044**

## AMENDATORY RIDER

This rider amends the policy or certificate to which it is attached. It takes effect and ends at the same time as such policy or certificate.

In consideration of the premium, the following benefit is added:

### Spouse Training Benefit

We will pay this benefit if the insured:
    a) has elected dependent spouse coverage prior to time of accident; and
    b) dies within a year of, and as a result of, a covered accident; and
    c) is survived by a dependent spouse.

The benefit will be payable for the insured's surviving spouse who:
    a) enrolls within one year after the insured's death in any accredited school
       for the purpose of retraining or refreshing skills needed for employment; and
    b) incurs expenses payable directly to, or approved and certified by such school.

We will pay the cost of such incurred expense for not more than:
    a) one year after the first retraining/refresher course begins; or
    b) an amount equal to 3% of the Insured's Principal Sum, but not more than
       $5,000 whichever is less.

Payment will be in addition to all other policy benefits.

Except for the above, this rider does not change the policy or certificates in any way.

## AMENDATORY RIDER

This rider amends the policy or certificate to which it is attached. It takes effect and ends at the same time as such policy or certificate.

In consideration of the premium, the following benefit is added:

### Business Travel Accident

In the event that an insured or a covered spouse is injured in a covered accident while traveling on the business for the policyholder, an additional benefit of $25,000 will be paid to the beneficiary.

Traveling on the business of the policyholder is defined as a trip or short stay outside of the insured employees normal work territory that is authorized and expenses paid by, the policyholder.

Commutation travel and personal deviations are not covered.

# LIFE INSURANCE COMPANY OF NORTH AMERICA

## AMENDATORY RIDER

This rider amends the policy or certificate to which it is attached. It takes effect and expires at the same time as the policy or certificate.

The cover page caption is amended to read "Accidental Death and Dismemberment Policy."

The following definition is added:

"Severance" means the complete separation and dismemberment of the limb from the body.

No other policy provision or condition is changed in any way by this rider.

LIFE INSURANCE COMPANY OF NORTH AMERICA

*Gordon L. Murphy*

GORDON L. MURPHY, President

LM-6B24                                                                                                    4/88

# LIFE INSURANCE COMPANY OF NORTH AMERICA

This rider amends the policy or certificate to which it is attached and ends at the same time. The following provision is added.

## CONVERSION PRIVILEGE

We will issue a converted policy to you (the Insured) if the accidental death insurance under the policy or certificate ends for any of the following reasons:

 a) employment or membership ends; or
 b) eligibility ends (except for age); or
 c) the group or blanket policy or plan ends.

**Age:** You must be under age 70 to get a converted policy.

**Health:** We will not ask for your proof of insurability.

**Application:** To get a converted policy, you must: (1) apply within 31 days after group coverage ends; and (2) pay the first premium. If you have assigned ownership of your group coverage, the owner must apply for you.

**Cost:** Your premium will be based on: (1) the class of risk to which you belong; (2) your age; and (3) the form and amount of coverage issued.

**Effective Date:** Your converted policy will take effect on: (1) the date group coverage ends; or, if later, (2) the date you apply for the converted policy.

**Benefits:** The converted policy will cover accidental death and dismemberment. The amount you apply for must be: (1) in $1,000 increments; and (2) not less than $25,000 nor more than the amount of your group insurance if greater than $25,000; and not more than $150,000.

**Exclusions:** The converted policy may exclude the hazards or conditions that apply to your group coverage at the time it ends. We will reduce payment under the converted policy by the amount of any benefits paid under the group policy if both cover the same loss.

**Dependents:** Dependents may also convert group coverage when they cease to be eligible for any reason except age.

**Renewability:** The converted policy may provide that it can be renewed on any anniversary with the consent of the Company subject to a maximum age limit.

**Prior Converted Policy:** If you convert your group coverage and later again be insured under the same group plan, you may not convert a second time unless: (1) you give us, at your expense, proof of your insurability; or (2) the prior converted policy is no longer in force.

**State Laws:** If the converted policy we provide in the state where the group policy was issued cannot lawfully be provided in the state where you reside at time of conversion, you may choose a form that is available for conversion in your state.

No other policy provision or condition is changed in any way by this rider.

LIFE INSURANCE COMPANY OF NORTH AMERICA

*Hartzel Z. Lebed*

HARTZEL Z. LEBED, President

I M-9L78a

4-16-82 Printed in U.S.A.

## DESCRIPTION OF COVERAGE

**Benefits for Accidental Loss of Life, Limb, Sight, Speech, Hearing and Paralysis:**

If, within 365 days from the date of accident covered by the policy, bodily injuries result in any of the following losses, we will pay the benefit set opposite such loss; provided, however, that if the Insured sustains more than one such loss as the result of any one accident, we will pay only the one largest amount to which the Insured is entitled. This amount will not exceed the Principal Sum.

| | |
|---|---|
| Loss of Life | The Principal Sum |
| Loss of Both Hands | The Principal Sum |
| Loss of Both Feet | The Principal Sum |
| Loss of Entire Sight of Both Eyes | The Principal Sum |
| Loss of One Hand and One Foot | The Principal Sum |
| Loss of One Hand and Entire Sight of One Eye | The Principal Sum |
| Loss of One Foot and Entire Sight of One Eye | The Principal Sum |
| Loss of Speech and Hearing (both ears) | The Principal Sum |
| Quadraplegia (total paralysis of both upper and lower limbs) | The Principal Sum |
| Loss of One Arm | One-Half the Principal Sum |
| Loss of One Leg | One-Half the Principal Sum |
| Paraplegia (total paralysis of both lower limbs) | One-Half the Principal Sum |
| Loss of One Hand | One-Half the Principal Sum |
| Loss of One Foot | One-Half the Principal Sum |
| Loss of Entire Sight of One Eye | One-Half the Principal Sum |
| Loss of Speech | One-Half the Principal Sum |
| Loss of Hearing (both ears) | One-Half the Principal Sum |
| Hemiplegia (total paralysis of upper and lower limbs on one side of body) | One-Half the Principal Sum |
| Loss of Thumb and Index Finger | One-Quarter the Principal Sum |

"The Principal Sum" is stated in the policy.

"Loss" means with regard to hand or foot complete severance through or above the wrist or ankle joint; loss of an arm or leg means complete severance through or above the elbow or knee joint; loss of an eye means total and irrecoverable loss of sight; loss of speech means complete inability to communicate audibly in any degree; loss of hearing means irrecoverable loss of hearing which cannot be corrected by any hearing aid or device; loss of thumb and index finger means severance of each through or above the joint closest to the wrist. (In California, loss of a thumb and index finger means loss by complete severance of at least one whole phalanx of each.) (In South Carolina, the loss of four whole fingers from one hand equals the loss of one hand.)

"Paralysis" means loss of use, without severance, of a limb. This loss must be determined by a physician to be complete and not reversible.

Revised   2-85
6-21-83   Printed in U.S.A.

## EXCLUSIONS

No benefits will be paid for loss resulting from:

1. intentionally self-inflicted injuries, or any attempt thereat, while sane or insane (in Missouri, while sane).

2. declared or undeclared war or act of war.

3. accident occurring while the Insured is serving on full-time active duty for more than 30 days in any Armed Forces. (Send us proof of service. We will refund any premium paid for this time.) (Reserve or National Guard active duty for training is not excluded.)

4. travel or flight (including getting in or out, on or off) in any aircraft or device which can fly above the earth's surface, if:

    A. the aircraft or device is being used:

        (1) for test or experimental purposes; or

        (2) by or for any military authority. (Aircraft flown by the U.S. Military Airlift Command (MAC) or similar service of another country are not excluded); or

        (3) for travel, or is designed for travel, beyond the earth's atmosphere; or

        (4) by or for the named organization or any of its subsidiaries and affiliates. (This exclusion applies whether the aircraft or device is owned, leased, operated or controlled, as defined. Chartered aircraft, as defined, are not excluded); or

    B. the Insured is:

        (1) serving as pilot or crew member (or student taking a flying lesson) and is not riding as a passenger; or

        (2) hang-gliding; or

        (3) parachuting, except where the Insured has to make a parachute jump for self-preservation.

5. commission of a felony by the Insured.

6. sickness, disease or bodily infirmity. (Bacterial infection resulting from an accidental cut or wound or accidental ingestion of a poisonous food substance are not excluded.)

## DEFINITIONS

"Owned Aircraft" means one to which you hold legal or equitable title. You can use, alter or sell your property as you wish.

"Leased Aircraft" means one you do not own. You use the aircraft as you wish for the term of the written lease. The time will be longer than a few days or one or two trips. You cannot alter or sell the aircraft without consent of the owner.

"Operated or Controlled Aircraft" means one you do not own. It will be leased, rented or borrowed for more than 10 straight days. You can use it as you wish. You can not alter or sell the aircraft without consent of the owner.

"Chartered Aircraft" means one you do not own. It will be hired for one purpose or one trip or for general use. The time you have it may not exceed 10 straight days nor more than 15 days in any one year. One or more aircraft hired on a regular or frequent basis are not chartered.

4-16-82   Printed in U.S.A.

LM-2L64

# LIFE INSURANCE COMPANY OF NORTH AMERICA

## AMENDATORY RIDER

This rider amends the policy or certificate to which it is attached. It is in force only while the policy is in force.

In return for the premium the following exclusion is added.

No benefits will be paid for:

7. Voluntary self-administration of any drug or chemical substance not prescribed by a licensed physician. (Accidental ingestion of a poisonous substance is not excluded.)

Except for the above, this rider does not change the policy in any way.

LIFE INSURANCE COMPANY OF NORTH AMERICA

GORDON L. MURPHY, President

LM-5108b                                                                12/86   Printed in U.S.A.

# POLICY PROVISIONS

**ENTIRE CONTRACT; CHANGES:**

This policy with application, endorsements, riders and attached papers is the entire contract between the Organization and us. If required the applications of any Insured may also be made part of this contract. In the absense of fraud, statements made by the Organization or by an Insured are deemed representations and not warranties. No such statement will cause us to deny or reduce the benefits due under the policy or be used as a defense to a claim; unless, it is contained in a signed written application. After two years from the date coverage starts no such statement (except age) will cause this policy to be contested.

No change in the policy will be valid until approved by one of our Executive Officers. This approval must be endorsed on or attached to this policy. No agent may change this policy or waive any of its provisions.

**ADDITION OF NEW MEMBERS:**

All persons added to the classes described in the Organization's application are eligible for coverage under this policy.

**NOTICE OF CLAIM:**

Written notice must be given within 30 days [Kentucky: 60 days] after a covered loss begins or as soon as reasonably possible. Notice can be given to us at our home office at Philadelphia, Pennsylvania or to our agent. Notice should include the Insured's name, address and policy number.

**CLAIM FORMS:**

When we receive the notice of claim, we will send forms for filing proof of loss. If claim forms are not sent within 15 days the proof requirements will be met by submitting, within 90 days, written proof of the nature and extent of the loss.

**PROOFS OF LOSS:**

Written proof must be given to us within 90 days after the date of loss. If that is not reasonably possible, we will not deny or reduce any claim if proof is furnished as soon as reasonably possible.

**TIME OF PAYMENT OF CLAIMS:**

Benefits for loss covered by this policy will be paid as soon as we receive proper written proof of such loss.

**PAYMENT OF CLAIMS:**

Loss of life benefits will be paid to the beneficiary named in our files. The benefits can be paid in one lump sum or at the Insured's written request, in accordance with one of our available settlement plans. If the Insured has not chosen any such mode of settlement, the beneficiary can do so after the death of the Insured. The beneficiary should request us in writing to be paid from an available settlement plan. We must agree to the plan chosen. If there is no surviving beneficiary, the Insured's loss of life benefits will be paid in one lump sum to the first surviving class of the following classes of beneficiaries: (a) wife or husband; (b) child or children; (c) mother or father; (d) sisters or brothers. If there is no surviving member of any of the above classes, the benefits will be paid to the estate. All other benefits will be paid to the Insured. If we are to make payments to the estate, or to a family member who is incapable of giving a valid release, we may pay up to $1000 to a relative by blood or marriage whom we believe is equitably entitled. This does not apply where the total payment will be over $1000. This good faith payment satisfies our legal duty to the extent of that payment.

**PHYSICAL EXAMINATIONS AND AUTOPSY:**

We will pay the cost and have the right to have the Insured examined as often as reasonably necessary while the claim is pending. We can have an autopsy made at our expense unless prohibited by law. (Autopsies are not permitted in Massachusetts, Mississippi and South Carolina.)

LM-21.61

4-16-82   Printed in U.S.A.

# GENERAL PROVISIONS CONCERNING ADMINISTRATION

## REPORTS BAND PREMIUM PAYMENTS:

The Organization or the authorized agent must give us:

1. an initial report within 45 days after the Effective Date of the Policy. This report must list the names of all eligible persons covered on the Effective Date of the policy; and

2. a monthly report thereafter, listing all eligible persons added for coverage; and

3. a monthly report thereafter, listing any person whose coverage has ended.

Monthly reports are to be sent to us with the correct premium. They are due not later than 45 days after the start of the month being reported.

## PREMIUMS SUBJECT TO CHANGE:

Our table of premium rates is subject to change at any time after payment of the first premium. We will give 31 days written notice of any such change. Notice will be sent to the Organization's most recent address in our files. New rates will take effect on the Policy Anniversary or on the next premium due date following notice of the change of rates but not more than once in a 12 month period.

## GRACE PERIOD:

After payment of the first premium, this policy will have a 31-day grace period. This means that if a premium is not paid on or before the date it is due, it may be paid during the 31-day grace period. During this time, the policy will stay in force. The Organization is liable for the payment of any premium while coverage is in force.

## AFFILIATED OR SUBSIDIARY ORGANIZATIONS:

We will insure the employees or members of the Organization's affiliates and subsidiaries. They must, however, fall within the eligible covered classes described in the policy.

## NEWLY ACQUIRED ORGANIZATIONS:

The policy premium applies only to the Organization as composed on the Effective Date of the policy or as thereafter amended.

New employees or members acquired through merger, stock purchase, exchange of stock, or otherwise may be covered under the policy. Their coverage is subject to the following conditions:

1. that the Organization pay the correct additional premium; and

2. that it report to us the name of the newly acquired organization along with any underwriting data we may need to determine the correct premium.

Coverage will start in accordance with the policy enrollment provisions. In no case, however will coverage continue for more than 60 days unless:

1. the required report has been made; and

2. the additional premium has been agreed on and paid.

The Organization must pay for any period in which coverage is in effect.

# GENERAL PROVISIONS CONCERNING PERSONAL INSURANCE

**ELIGIBILITY:**

Persons eligible to be covered under this policy are those who qualify for the class(es) described in the Policy Application.

This includes anyone who may become eligible while the policy is in force.

No person may be insured as both an employee (or member) and as a dependent at the same time. If a family plan is elected, only one person in the family may be insured as an employee (or member).

**EFFECTIVE DATE OF INSURANCE:**

**Initial Benefit:** Coverage for eligible persons will start:

(1) On the date the person becomes eligible if all eligible persons are to be insured without paying any part of the premium;

(2) On the policy effective date if we receive the application before that date;

(3) On the first day of the month following our receipt of the application after the policy effective date.

The correct first premium must be paid when due.

**Late Applications:** We will have to approve the application of an eligible person who does not apply:

(1) during the first enrollment period; or

(2) within 31 days after becoming eligible.

Coverage will start after our approval has been given. Approval is based on proof of insurability.

An eligible person must be regularly performing the duties of his (or her) occupation as of the effective date of coverage. If at this time, a person is not regularly performing those duties, coverage will start on the first day of the month that follows a return to those duties.

**Additional Benefits:** An eligible person may apply for additional benefits under this policy during an open enrollment period. Coverage will take effect on the first day of the month that follows receipt of the application.

For others who apply at a time other than an open enrollment period, coverage will start on the date we approve the application. Approval is based on proof of insurability.

**TERMINATION OF PERSONAL INSURANCE:**

Coverage for any Insured who is no longer eligible will end on the date of termination of eligibility; subject, however, to any applicable "Conversion Privilege" contained in this policy. We will refund pro rata the unearned premium, if any.

Eligibility will end if any of the following occur:

1. attainment of age 70; or

2. more than 30 days full-time active duty in any national or foreign Armed Forces; or

3. the date a person fails to fall within a covered class; or

4. non-payment of premium.

Coverage for employees of the Organization absent due to disability or authorized leave will end on the date any of the following occur:

1. termination of payroll deduction; or

2. termination of central collection of premiums.

We will refund pro rata the unearned premium, if any.

# GENERAL PROVISIONS CONCERNING DEPENDENTS INSURANCE

**NO DEPENDENT WILL BE COVERED
UNLESS THE PROPER COVERAGE PLAN HAS BEEN SELECTED AND
THE CORRECT PREMIUM HAS BEEN PAID.**

**ELIGIBILITY:**

"Eligible Dependents" are defined as:

a. the Insured's spouse under age 70; and

b. the Insured's unmarried children over 14 days and under 19. The age limit is under 25 if the child is enrolled full time in an accredited school or college.

Children can include stepchildren, foster children, legally adopted children and children of adopting parents pending adoption procedures.

Dependent children must:

a. have their principal residence with the Insured; and

b. chiefly rely on the Insured for support and maintenance.

**EFFECTIVE DATE AND TERMINATION:**

Coverage for dependents, as defined above, will start and end in accordance with the General Provisions Concerning Personal Insurance. (See page 5.) In no case, will coverage take effect before the Insured's or end later than the Insured's.

Coverage will continue for any child who reaches the age limit and is both:

1. totally incapable of self-sustaining employment due to a physical or mental handicap; and

2. chiefly dependent on the Insured for support and maintenance.

The Insured must give us proof of the child's incapacity and dependency within 31 days of the child reaching the age limit. We may require proof again from time to time but not more often than once a year after the 2 years that follow the child reaching the age limit.

# EXHIBIT B

# STATE OF FLORIDA
## OFFICE of VITAL STATISTICS
### CERTIFIED COPY
## CERTIFICATE OF DEATH
## FLORIDA

LOCAL FILE NO.

| | | |
|---|---|---|
| 1. DECEDENT'S NAME  FIRST **Sharon**  MIDDLE **Marie**  LAST **MILLS** | | 2. SEX **Female** |
| 3. DATE OF DEATH (Month, Day, Year)  FD: **February 13, 2002** | 4. SOCIAL SECURITY NUMBER **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** | 5a. AGE–Last Birthday (years) **50**  5b. UNDER 1 YEAR Months Days  5c. UNDER 1 Day Hours Minutes |
| 6. DATE OF BIRTH (Month, Day, Year)  **November 12, 1951** | 7. BIRTHPLACE (City and State or Foreign Country)  **Roanoke, Virginia** | 8. WAS DECEDENT EVER IN U.S. ARMED FORCES? (Yes or No) **No** |

9a. PLACE OF DEATH (Check only one: see instructions on other side)

HOSPITAL: ☐ Inpatient  ☐ ER/Outpatient  ☐ DOA    OTHER: ☐ Nursing Home  ☐ Residence  ☑ Other (Specify) **Drainage Ditch**   | 9b. INSIDE CITY LIMITS? (Yes or No) **No**

| | | |
|---|---|---|
| 9c. FACILITY NAME (If not institution, give street and number) **Intersection of 173 and Lyons Lane** | 9d. CITY, TOWN, OR LOCATION OF DEATH | 9e. COUNTY OF DEATH **Holmes** |
| 10a. DECEDENT'S USUAL OCCUPATION **Customer Service Representative** | 10b. KIND OF BUSINESS/INDUSTRY **Gas Company** | 11. MARITAL STATUS – Married, Never Married, Widowed, Divorced (Specify) **Married** | 12. SURVIVING SPOUSE (If wife, give maiden name) **Dwight Mills** |
| 13a. RESIDENCE – STATE **Alabama** | 13b. COUNTY **Houston** | 13c. CITY, TOWN, OR LOCATION **Dothan** | 13d. STREET AND NUMBER **116 Woods Drive** |
| 13e. INSIDE CITY LIMITS?(Yes or No) **Yes** | 13f. ZIP CODE **36301** | 14. WAS DECEDENT OF HISPANIC OR HAITIAN ORIGIN? (Specify No or Yes – If yes, specify Haitian, Cuban, Mexican, Puerto Rican, etc.) **X** No ☐ Yes  Specify: | 15. RACE – American Indian, Black, White, etc. Specify: **White** | 16. DECEDENT'S EDUCATION (Specify only highest grade completed) Elementary/Secondary (0–12) **12**  College (1–4 or 5+) |
| 17. FATHER'S NAME (First, Middle, Last) **John Cleveland Compton** | | 18. MOTHER'S NAME (First, Middle, Maiden Surname) **Hazel Virginia Lanter** |
| 19a. INFORMANT'S NAME (Type/Print) **Dwight Mills** | 19b. MAILING ADDRESS (Street and Number or Rural Route Number, City or Town, State, Zip Code) **116 Woods DRive, Dothan, Alabama 36301** | |

| | | |
|---|---|---|
| 20a. METHOD OF DISPOSITION ☐ Burial  ☐ Cremation  **X** Removal from State  ☐ Donation  ☐ Other (Specify) | 20b. PLACE OF DISPOSITION (Name of cemetery, crematory, or other place) **Southeastern Crematory** | 20c. LOCATION – City or Town, State **Pensacola, Florida** |
| 21a. SIGNATURE OF FUNERAL SERVICE LICENSEE OR PERSON ACTING AS SUCH  *Robert Byrd* | 21b. LICENSE NUMBER (of Licensee) **4046** | 21c. NAME AND ADDRESS OF FACILITY **BYRD FUNERAL HOME 3409 W. Main St., Dothan, AL 36305** |

| | |
|---|---|
| 22a. To the best of my knowledge, death occurred at the time, date and place and due to the cause(s) as stated. (Signature and Title) | 23a. On the basis of examination and/or investigation, in my opinion death occurred at the time, date and place and due to the cause(s) and manner as stated. (Signature and Title) |
| 22b. DATE SIGNED (Mo., Day, Yr) | 22c. HOUR OF DEATH | 23b. DATE SIGNED (Mo., Day, Yr) **June 26, 2002** | 23c. HOUR OF DEATH FD: **0745** Hrs |
| 22d. NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER (Type or Print) | 23d. MEDICAL EXAMINER'S CASE # FD: **02-14-00058** |

24. NAME AND ADDRESS OF CERTIFIER (PHYSICIAN, MEDICAL EXAMINER) (Type or Print)
**E. Hurt Scheueman, M.D.  3737 Frankford Avenue  Panama City, Florida 32405**

| | | |
|---|---|---|
| 25a. SUBREGISTRAR – SIGNATURE AND DATE | 25b. LOCAL REGISTRAR – SIGNATURE  *Donna Burger* | 25c. DATE REGISTERED **July 15, 2002** |

26. PART I. Enter the diseases, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line.  |  Approximate Interval Between Onset and Death

IMMEDIATE CAUSE (Final disease or condition resulting in death) →  a. **Undetermined 798.9**

DUE TO (OR AS A CONSEQUENCE OF):

Sequentially list conditions, if any, leading to immediate cause. Enter UNDERLYING CAUSE (Disease or injury that initiated events resulting in death) LAST   b.

DUE TO (OR AS A CONSEQUENCE OF):

c.

DUE TO (OR AS A CONSEQUENCE OF):

PART II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I.

| 27a. WAS AN AUTOPSY PERFORMED? (Yes or No) **Yes** | 27b. WERE AUTOPSY FINDINGS USED TO COMPLETE CAUSE OF DEATH? (Yes or No) **Yes** | 28. CASE REPORTED TO MEDICAL EXAMINER? (Yes or No) |
|---|---|---|

| 29. IF FEMALE, WAS THERE A PREGNANCY IN THE PAST 3 MONTHS? Yes or No | 30a. IF SURGERY IS MENTIONED IN PART I or II, ENTER CONDITION FOR WHICH IT WAS PERFORMED | 30b. DATE OF SURGERY (Mo., Day, Year) |
|---|---|---|
| 31. PROBABLE MANNER OF DEATH (Specify) Natural, accident, suicide, | 32a. DATE OF INJURY (Month, Day, Year) | 32b. TIME OF INJURY | 32c. INJURY AT WORK? (Yes or No) | 32d. DESCRIBE HOW INJURY OCCURRED |

# EXHIBIT
# C

# BARGAINING UNIT EMPLOYEE INSURANCE ENROLLMENT/CHANGE FORM

| MILLS | DWIGHT | M | 014348 | 05JUL95 |
|---|---|---|---|---|
| Last Name | First Name | MI | Employee No. | Hire Date |

☐ Single  ☐ Divorced  ☐ Married
☐ Widowed  ☐ Separated  ☐ Spouse Name _____    Spouse Place of Employment _____

## HEALTH AND VISION (List Yourself And Your Dependents Below And Check Yes or No)

| LAST NAME  FIRST NAME  MI | Relationship | DOB (MMDDYY) | Sex | SSN | Health Yes | No | Vision Yes | No |
|---|---|---|---|---|---|---|---|---|
| MILLS, DWIGHT  M | Employee | 31 AUG54 | M | 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 | ☒ | ☐ | ☐ | ☒ |
| MILLS, SHARON  C | Spouse | 12 NOV51 | F | 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 | ☒ | ☐ | ☐ | ☒ |
|  |  |  |  |  | ☐ | ☐ | ☐ | ☐ |
|  |  |  |  |  | ☐ | ☐ | ☐ | ☐ |
|  |  |  |  |  | ☐ | ☐ | ☐ | ☐ |
|  |  |  |  |  | ☐ | ☐ | ☐ | ☐ |
|  |  |  |  |  | ☐ | ☐ | ☐ | ☐ |

If additional space is needed for dependents, continue on back of card

## BASIC AND OPTIONAL LIFE

| BASIC LIFE (No cost to employee) | | OPTIONAL LIFE | |
|---|---|---|---|
| EMPLOYEE | Class I =$60,000/Class II=$45,000 (AD&D) | ☒ Elect ($25,000) | ☐ Decline |
| DEPENDENT | Spouse = $4,750    Child(ren) = $1,750 | ☒ Elect (Spouse = $12,500/Child = $6,250) | ☐ Decline |

(increments of $25,000 to $300,000 up to 10 times annual earnings)

**PERSONAL ACCIDENT** ☐ Decline   ☐ Employee   ☒ Family Plan   Benefit Amount $ 200,000

## BENEFICIARY DESIGNATION

I designate the following beneficiary(ies) under the life insurance coverage specified above. Furthermore, I reserve the right to change the beneficiary(ies) in accordance with the policy provision. If more than one beneficiary is named, the death benefits, unless otherwise indicated herein, will be paid in equal shares to the designated beneficiaries who survive the insured.  If no such beneficiary survives, payment will be made in accordance with the policy. You will be your family members' beneficiary for Personal Accident insurance, Dependent Life and Optional Dependent Life unless you specify otherwise in writing.

| Name | Relationship | Address |
|---|---|---|
| LEO M MILLS | FATHER | 272 LUDMOR RD. DOTHAN AL. 36303 |
| MARTHA  MILLS | MOTHER | 1207 GLENWOOD ST. DOTHAN AL. 36301 |

## DENTAL INSURANCE (Complete IAM Enrollment Card) - (No Cost To Employee)

I hereby accept the forms of Free Group Insurance and the form(s) of Contributory Group Insurance which I have checked above, presently contracted for me, by my employer as described in the descriptive booklet in the amount(s) for which I am or may become eligible, and authorize until revoked by me in writing, the deduction by my employer from my earnings of amounts sufficient to cover any contribution toward the premium under said Group Insurance Contracts.

DATE  05 FEB 2002            SIGNATURE OF EMPLOYEE  Dwight M Mills

NOTE: If you decline Optional Life, Personal Accident Life, Vision and/or Health and decide after 30 days of initial enrollment to elect this coverage, you will have to wait until the next annual enrollment. Refer to your insurance books and CBA for eligibility of all insurance benefits.

FOR PERSONNEL USE ONLY:  ☐ New Enrollment      ☐ Change Status

ADDRESS:

REMARKS:  Change beneficiary 2-5-02

☐ BCBS  ☒ PDBS  ☐ PDED  ☐ COBRA

OPTIONAL FORM 99 (7-90)

**FAX TRANSMITTAL**    # of pages ►

| To  Brian Billeter | From  Peggy Chapman |
|---|---|
| Dept./Agency | Phone  Dyn Corp |
| Fax # | Fax # |

GENERAL SERVICES ADMINISTRATION

# EXHIBIT D

**GROUP/ASSOCIATION — PROOF OF LOSS
LIFE INSURANCE — ACCIDENTAL DEATH INSURANCE**

Connecticut General Life Insurance Company
Insurance Company of North America
Life Insurance Company of North America
INA Life Insurance Company of New York
CIGNA companies

CIGNA

Any person who knowingly and with intent to defraud any insurance company or other person files a statement containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

## INSTRUCTIONS FOR FILING A CLAIM

THIS FORM IS FOR LIFE INSURANCE OR ACCIDENTAL DEATH PROCEEDS ONLY.
THIS CLAIM WILL BE SUBJECT TO DELAY OR RETURN IF THESE INSTRUCTIONS ARE NOT FOLLOWED.

To the Employer/ Administrator:
A. Submit completed form to the assigned Claim Office with a certified Death Certificate.
B. If a Death Certificate is not available, the reverse of the form must be completed by a physician.
C. If claim is for accidental death, Authorization to Release Information (CL423269) must be submitted.

| NAME OF EMPLOYEE/ASSOCIATION MEMBER (Last Name) | (First Name) | (Middle Initial) | DATE OF BIRTH | SOCIAL SECURITY NO. | SEX |
|---|---|---|---|---|---|
| Mills | Dwight | M. | 08-31-54 | 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 | ☒ M ☐ |

| ADDRESS (Street) | (City) | (State) | (Zip Code) |
|---|---|---|---|
| 1207 Glenwood Street; Dothan, AL 36301 | | | |

| POLICY NUMBER(S) (including AD&D policy no. if different) | OCCUPATION | WAS INSURANCE ISSUED ON THE BASIS OF A STATEMENT OF PHYSICAL CONDITION? ☐ YES ☒ NO If yes, attach |
|---|---|---|
| | Aircraft Mechanic | |

PLEASE CHECK THE APPROPRIATE BLOCKS REGARDING THE INSURED'S EMPLOYMENT STATUS.    Hrs/wk  40

☒ Active   ☐ Exempt   ☐ Management   ☐ Supervisory   ☒ Union Local # 2003   ☐ Salaried   ☒ Full-time
☐ Retired   ☐ Non-Exempt   ☐ Non-Management   ☐ Non-Supervisory   ☐ Non-Union   ☒ Hourly   ☐ Part-time

| BASIC ANNUAL EARNINGS | DATE OF LAST CHANGE IN EARNINGS | DATE OF LAST INCREASE IN BENEFITS | AMOUNT OF INSURANCE |
|---|---|---|---|
| | | | Basic: 200,000 Supp.:       AD&D: |

| DATE HIRED/MEMBER OF ASSOCIATION | EFFECTIVE DATE OF INSURANCE | LAST DATE WORKED | PREMIUM PAID THROUGH DATE | % OF INSURED'S CONTRIBUTION TO PREMIUM |
|---|---|---|---|---|
| 07-05-95 | 10-01-95 | N./A | Current | 100% |

| WAS THE ABOVE CONSIDERED AN EMPLOYEE/ASSOCIATION MEMBER UNTIL DATE OF DEATH? IF NOT, PLEASE EXPLAIN. | WAS COVERAGE STILL IN EFFECT THROUGH DATE OF DEATH? IF NOT, PLEASE EXPLAIN. |
|---|---|
| YES | YES |

## TO BE COMPLETED IF CLAIM IS FOR DEPENDENT BENEFITS

| NAME OF DEPENDENT (Last Name) | (First Name) | (Middle Initial) | DATE OF BIRTH | SOCIAL SECURITY NO. | SEX |
|---|---|---|---|---|---|
| Mills | Sharon | C. | 11-12-51 | 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 | ☐ M ☒ |

| RELATIONSHIP TO EMPLOYEE/ASSOCIATION MEMBER | AMOUNT OF DEPENDENT INSURANCE | DEPENDENT'S OCCUPATION |
|---|---|---|
| Spouse | 60% of $200,000 | Unemployed |

IF CHILD ☐ Full time-student   NAME & ADDRESS OF SCHOOL
        ☐ Part time-student

## TO BE COMPLETED IF CLAIM IS FOR ACCIDENTAL DEATH BENEFITS

WHERE AND HOW DID THE ACCIDENT HAPPEN? PLEASE DESCRIBE IN DETAIL.

**See Death Certificate**

DATE AND TIME OF ACCIDENT   WHAT DISEASES, ILLNESSES OR INJURIES DID THE DECEASED HAVE DURING THE PAST 3 YEARS?

PLEASE LIST ANY HOSPITALS, CLINICS OR PHYSICIANS THAT TREATED THE DECEASED DURING THE PAST 3 YEARS.

| NAME | COMPLETE ADDRESS | TREATMENT PERIOD |
|---|---|---|
| | | |

## BENEFICIARY INFORMATION

| NAME OF BENEFICIARY (Last Name) | (First Name) | (Middle Initial) | DATE OF BIRTH | SOCIAL SECURITY NO. | SEX |
|---|---|---|---|---|---|
| Mills | Dwight | M. | 08-31-54 | 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 | ☒ M ☐ |

| ADDRESS (Street) | (City) | (State) | (Zip Code) |
|---|---|---|---|
| 1207 Glenwood Street; Dothan, AL 36301 | | | |

| RELATIONSHIP TO DECEASED | NAME AND ADDRESS OF LEGAL GUARDIAN IF BENEFICIARY IS A MINOR |
|---|---|
| Spouse | |

HAS AN ASSIGNMENT BEEN TAKEN? If so, please attach.
☐ YES ☒ NO

## EMPLOYER'S/ADMINISTRATOR'S CERTIFICATION

| NAME OF EMPLOYER/ASSOCIATION | DIVISION |
|---|---|
| DynCorp | |

| ADDRESS (Street) | (City) | (State) | (Zip Code) | TELEPHONE # |
|---|---|---|---|---|
| P.O. Box 620039 | Ft. Rucker, | AL | 36362 | ( 334 )-598-0414 |

THIS IS TO CERTIFY THAT THE FACTS AS INDICATED ABOVE ARE TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF.

| SIGNATURE OF AUTHORIZED REPRESENTATIVE | TITLE | DATE SIGNED |
|---|---|---|
| | Manager, Human Resources | 08-12-02 |

# EXHIBIT E

Brian Billeter
Product Specialist
Consumer Financial Security

**CIGNA** Group Insurance
Life • Accident • Disability

August 27, 2002

1600 West Carson Suite 300
Pittsburgh, PA 15219-3419
Telephone 1-800-238-2125
Facsimile 412-402-3316

Dwight Mills
1207 Glenwood Street
Dothan Mills, AL 36301

| | |
|---|---|
| **Insured Name:** | **Dwight for Sharon Mills** |
| **Social Security Number:** | **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** |
| **Policy Number:** | **OK 809795** |
| **Underwriting Company:** | **Life Insurance Company of North America** |

Dear Mr. Mills:

Thank you for sending the Group Term Accidental Death insurance claim for Sharon Mills, for benefits she had through Dyncorp. I am sorry to learn about her death. To give you the best possible service, I need additional information from you.

I will be writing directly to the coroner's office and police department for a copy of their reports. Should any of the following be available to you, please send me a copy in the enclosed envelope.

- A copy of any newspaper articles, official police, or medical examiner reports.

- The name and address of any hospital, clinic, physician or therapist that treated Sharon Mills in the past three years.

- Enclosed is an Authorization to Release Information form that may be required by the coroner. Sharon Mills's executor should sign this. If there has not been one appointed it can be signed by his next-of-kin.

Mr. Mills, I would like to thank you for your assistance in this matter. You may mail the information in the enclosed envelope or fax it to me. My fax number is 412.402.3316. When I receive this information, I will continue my review of the claim. If additional information is needed from you, I will contact you.

Life Insurance Company of North America,

If you have any questions, please call me. You can reach me at our toll free number 1.800.238.2125 extension 3249 from 8:00 a.m. to 4:30 p.m. Eastern Time, Monday through Friday or email me at Brian.Billeter@CIGNA.com.  If you call and get my voice mail, leave a message and your call will be returned within one business day.

Sincerely,

*Brian Billeter*

Brian Billeter

Enclosure

Life Insurance Company of North America,
Connecticut General Life Insurance Company,

# Return to: Brian Billeter

# Authorization to Release Information

I authorize any Health Care Provider, Insurance Company, Employer, Person or Organization to release any information regarding medical, dental, mental, alcohol or drug abuse history, treatment or benefits payable, including disability or employment related information, to any CIGNA company, the Plan Administrator, or their employees and authorized agents for the purpose of validating and determining benefits payable. This data may be extracted for use in audit or statistical purposes. I understand that I or my authorized representative will receive a copy of this authorization upon request. This authorization or a photostatic copy of the original shall be valid for the duration of the claim.

**Sharon Mills**
_____
Name of Patient (or Deceased)


_____                    _____
Signature                                           Date Signed


If patient is under 18 years of age or is incapacitated, parent or guardian must sign. If patient is deceased, personal representative or next of kin must sign.


**CHECK ONE:**

_____ I am the executor or administrator of the estate and enclosed is a copy of the short certificate or estate paper.

_____ There will be no estate administration. I am signing this authorization as the responsible person.

Life Insurance Company of North America,
Connecticut General Life Insurance Company,